300 P.2d 632

Ernest W. COWLEY, a/k/a E. W. Cowley, and C. Frank Cowley, a/k/a C. F. Cowley, Plaintiffs and Appellants,

v.

J. L. WATTERSON, Defendant and Respondent.

No. 8467.

Supreme Court of Utah.

Aug. 13, 1956.

L. E. Nelson, Logan, LeRoy B. Young, Ogden, for appellants.

Preston & Harris, Logan, for respondent.

McDONOUGH, Chief Justice.

Prior to 1912, plaintiffs Cowley maintained an irrigation ditch developed from a natural water course of the Tarbet or Blue Springs (contributing springs of the Swift Springs) to carry water to and from their farm lands in Cache County. In 1913, condemnation proceedings granted a right of way to the Oregon Short Line Railroad through the plaintiffs' land and the railroad track, when built, cut through the ditch, retaining the water from the springs north of the track and causing it to flow northwesterly. In the judgment of condemnation,

the Cowleys received a perpetual easement to use that part of the right of way referred to as a "borrow pit," formed by the elevation difference of the ballast and meadow land over which it was constructed:

"It is further Ordered, Adjudged and Decreed that the defendants, their and each of their administrators, executors, heirs, successors and assigns of all of Blocks Eight (8) and Nine (9), and Lot Three (3) in Block Ten (10) all in Plat 'C' Logan Hayland Survey shall have the perpetual privilege and easement to use the borrow-pit as now constructed on the North side of plaintiff's railroad track, for the drainage of the land above described, and to that end may connect drains from said land, with said borrow-pit."

Thereafter, the Cowleys, by damming the borrow pit, allowing the water to irrigate their property, and then removing the dams to permit the water to return to its course adjacent to the track, were able to provide the exact amount of water they desired for their crops. However, farmers south of the track protested to the railroad company that their water had been diverted by the track, and the company in about 1915 accommodated them by placing a galvanized iron pipe under the track upon the property of one Willard A. Hansen, northwest and at an elevation lower than the Cowley property in accordance with the westward declination of the land in that area.

In 1940, defendant Watterson purchased property northwest of the plaintiffs' land owned by the estate of one Joseph Hebaus. He placed various types of obstructions during the following years over the end of the pipe to divert the water through his ditch coursing east to his property. On some occasions plaintiffs removed the dams so placed when the water in excess of their irrigation needs backed up and appeared to threaten the flooding of their property.

In 1953, defendant placed an obstruction over the pipe and the water flooded plaintiffs' property, damaging a crop of hay, which was the occasion for the institution of this suit. Defendant counterclaimed for damage to his property by reason of plaintiffs' cattle trespassing on his land. The trial court awarded $50 damages to plaintiffs and $40 damages to defendant on these claims.

This appeal questions not only the amount of damages awarded to plaintiffs but also the trial court's conclusion that defendant Watterson had the right to place the dam to a point six inches below the top of the pipe in order to divert the water to his land ten days each month during the irrigation season.

The judgment recites that Watterson is the owner of the right to the use of 4 cfs of the waters from the springs. Although

278

there is some confusion in the record as to whether plaintiffs by this action intended to question defendant's ownership of a water right, the conclusion was merely incidental to a determination of a right to the easement. The distribution of rights to the water, including those of the plaintiffs and defendant's predecessor in interest, was made under the Kimball Decree and there is no claim by plaintiffs that they are deprived of water rights.

It appears that plaintiffs' main objective in bringing action was to obtain an injunction prohibiting any use of the borrow pit by defendant upon the theory that the judgment in the condemnation case gave them an *exclusive* right to its use. There are indications in the record that these neighbors could together solve the problem of conveying water to Watterson's land without injuring Cowleys' property in another manner and the trial court repeatedly tried to get them to do so. The parties refused compromise and submitted the questions of fact to the court. During the trial, defendant enlarged his diversion ditch and used for a dam a piece of tin which allowed an overflow in the upper six inches of the pipe. Counsel for plaintiffs waived the prayer for an injunction against the flooding because he agreed that plaintiffs' land was no longer in such danger. However, he contends that the fact that water was backed in the borrow pit by the half-dam used prevented rapid drainage from plaintiffs' land which was important to proper maintenance of the soil.

Plaintiffs cite as error the trial court's finding that the use of the borrow pit by the defendant and his predecessors in interest was adverse, under claim of right and not interrupted and that defendant acquired an easement by prescription for the conveyance of his irrigation water.

Under plaintiffs' own testimony there is sufficient evidence to support this finding, although perhaps the time stated, i. e., "for more than 50 years" may be open to question. Ernest Cowley testified that defendant's predecessor, Hebaus, had a ditch built to convey water from the borrow pit in 1933 and that "they flooded our land just like Watterson is doing." He recalled having employed an attorney regarding the flooding and Hebaus paid a settlement for damage to the Cowley property. This incident, or another similar to it, was remembered by Frank Cowley as having happened in 1924 and he testified, "Summons was placed on him (Hebaus) for damming the burrow pit up."

Plaintiffs claim, however, that the use by Hebaus was with their consent and testified that "Mr. Hebaus paid us every time he used it." This evidence was given in connection with the examination concerning the claim and settlement for flooding the land and the trial court may well have believed that Mr. Cowley was referring to

payment for the flooding or·disbelieved this evidence entirely since no further evidence was offered to show the existence of a contract or the price the Cowleys required of Hebaus for the use of the borrow pit. Defendant, as Hebaus, claims no right to flood the property and agrees that he is and will be liable to plaintiffs for damage occurring to them by reason of negligent use of the easement.

The fact that the Cowleys threatened suit against Hebaus indicates that some hostility existed in conflicting claims as far back as 1924; yet, at that time, they did not obtain an injunction nor enter a stipulation defining the rights. Of more recent date, the struggle between the claimants to the use of the borrow pit is clearly shown by the record.

In light of our conclusion, it is unnecessary to examine the record as to alleged error in Findings No. 7 and 8 concerning whether or not defendant's predecessor diverted these waters at a point south of the railroad track prior to 1912. Likewise immaterial is the issue as to whether defendant was using the piece of tin which he fashioned to permit an overflow of the water six inches below the top of the pipe prior to the time of trial. Plaintiffs complain that defendant bettered the condition of the ditch and dam, in derogation of the court's order, before the court had opportunity to view the situation during irrigation season, but it is obvious that the court was not deluded by this action since it found that defendant had flooded the plaintiffs' land.

As to the damages awarded, there is ample conflicting testimony and pictures showing the condition of the hay grown on the flooded land in comparison with hay not so flooded. Further, the trial court had the benefit of viewing the property twice during the course of the trial and concluded that a loss of $50 had occurred by reason of lessened productivity in 1953, but that the land itself had not been damaged.

There is evidence to support the findings made by the trial court and the judgment is affirmed. Costs to respondent.

CROCKETT, HENRIOD and WADE, JJ., concur.

WORTHEN, J., concurs in the result.